IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT L. ADAMS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.   23-1178 |
| | : | |
| DELAWARE COUNTY, *et al.* | : | |
| Defendants. | : | |

## MEMORANDUM

MURPHY, J.                                                      September 30, 2024

According to his pleadings, Mr. Adams was a pre-trial detainee at George W. Hill Correctional Facility.  He arrived after a transfer from another jail expecting to continue treatment for opioid abuse, including a prescription for Suboxone.  But George W. Hill staff halved his dose, citing policy.  Then they cut him off entirely, causing severe symptoms of forced withdrawal.

Mr. Adams filed this action *pro se* asserting violations of rights based on events that allegedly occurred while he was incarcerated at George W. Hill.  Mr. Adams alleges that Delaware County, corrections officials, the prison medical contractor, and prison medical staff violated his rights under the Americans with Disabilities Act, Rehabilitation Act, Eighth Amendment, and Fourteenth Amendment by denying him Medications for Opioid Use Disorder (MOUD) and mental health care.  He also asserts state law claims against the prison medical contractor and medical staff for professional negligence and intentional infliction of emotional distress.

The various defendants filed two motions to dismiss Mr. Adams's amended complaint for failure to state a claim.  For the following reasons, we grant in part and deny in part.

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Mr. Adams filed an amended complaint consisting of the preprinted Prisoner Complaint for Violation of Civil Rights, 39 handwritten pages, and attachments and exhibits.  DI 56.  The amended complaint is the operative pleading in this case.[1]  Mr. Adams names six defendants: (1) Delaware County; (2) The GEO Group, Inc.; (3) Warden Laura Williams; (4) Chief Medical Officer John Christakis; (5) Nurse Ivy Ford; and (6) Doctor Ronald B. Phillips.  *Id.* at 14-15.[2] He sues all defendants in their official and individual capacities.  *Id.*  Defendants The GEO Group and John Christakis have not been served.  DI 60, 66, 69.  Because we are on motions to dismiss, we accept Mr. Adams's allegations as true and summarize them below.

The core of Mr. Adams's complaint is that while housed as a pre-trial detainee at George W. Hill, he was forced to undergo opioid withdrawal and denied mental health care, ultimately resulting in life threatening symptoms.  Mr. Adams has struggled with Opioid Use Disorder (OUD) for most of his life.  DI 56 at 16.  He also struggles with various mental health disorders, including "bipolar disorder, manic depression, schizophrenia, oppositional defiant disorder, [and] PTSD."  *Id.*

Mr. Adams was detained at Bucks County Correctional Facility on October 1, 2022.  *Id.* at 18.  Before his arrest, he had been in treatment for severe opioid dependence for about six months and had received Suboxone "continuously" during this time.  *Id.*  While detained at

---

[1] *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that "an amended pleading supersedes the original pleading and renders the original pleading a nullity" and that "the most recently filed amended complaint becomes the operative pleading").  Mr. Adams named George W. Hill Health Services Administrator Kristen Grady as a defendant in his original complaint, DI 2 at 11, but not in his amended complaint, DI 56 at 12.  Accordingly, Ms. Grady is no longer a defendant in this case.

[2] We adopt the pagination supplied by the CM/ECF docketing system.

Bucks County Correctional, he received 16 milligrams of Suboxone and mental health medications — including 100 milligrams of "Seraquil" and 30 milligrams of "Rimron" — daily.[3] *Id.* at 18-19.

Mr. Adams arrived at George W. Hill on December 12, 2022 as a "security transfer" from Bucks County Correctional. *Id.* at 16. He then informed staff of his current medications and requested Suboxone, Seroquel, and Remeron. *Id.* at 19. He claims that the Bucks County Correctional medical department verified for George W. Hill the daily dosage amounts for his medications. *Id.*

According to Mr. Adams, Nurse Ford and Dr. Phillips — both medical providers at George W. Hill — formulated a "care plan" that consisted of "forced withdrawal from suboxone and mental health medications that he desperately needed." *Id.* at 22. As the Methadone-Assisted Treatment (MAT) Supervisor, Nurse Ford is allegedly responsible for "distributing suboxone" to people with OUD and for "overseeing all aspects concerning suboxone" at George W. Hill. *Id.* at 15, 39. Mr. Adams asked Nurse Ford for 16 milligrams of Suboxone and his psychiatric medications. *Id.* at 19. Nurse Ford responded that "she was only going to give him 8mg of suboxone" and that "she was not the nurse who gave out mental health medications." *Id.* Mr. Adams also requested 16 milligrams of Suboxone and 100 milligrams of Seroquel from Dr. Phillips, the Medical Director at George W. Hill. *Id.* at 21. Dr. Phillips informed Mr. Adams that the prison provides only 8 milligrams of Suboxone regardless of one's prior prescription. *Id.* "Psych meds [were] also denied." *Id.*

---

[3] Mr. Adams refers to the psychiatric medications he was taking as "Seraquil," "Rimron," and "Doxepin." DI 56 at 15-16, 36. Construing the complaint liberally, we assume he is referring to Seroquel, Remeron, and Doxepin.

On December 27, 2022, Nurse Ford provided Mr. Adams with 8 milligrams of Suboxone. *Id.* at 19-20.  He "took [the] medication into his mouth, under his tongue." *Id.* at 20.  Nurse Ford then went back to "playing" with an officer, who "began to have words with Mr. Adams." *Id.* Mr. Adams was accused of "cheeking" medication (i.e., concealing medication between one's teeth and cheek to avoid swallowing it). *Id.*  An officer searched him and his cell for the medication but found nothing. *Id.*  The next day, he received 8 milligrams of Suboxone. *Id.*  On December 29, 2022, when Mr. Adams asked for his Suboxone, Nurse Ford said "no." *Id.*  Mr. Adams told Nurse Ford that "she was causing him physical harm and could not just abruptly stop his medication." *Id.*  She replied, "I just did." DI 56 at 20.

Mr. Adams claims defendants' failure to provide MOUD caused him to suffer forced withdrawal from Suboxone. *Id.* at 27.  He experienced symptoms of "bone and joint pain, aches, vomiting, diarrhea, nausea, anxiety, depression, difficulty concentrating, insomnia, body numbness, and uncontrollable cravings for opioids." *Id.* at 22.  The forced withdrawal prevented him from exercising and made it difficult to read or eat. *Id.* at 23.  As his symptoms worsened, Mr. Adams complained about pain and cold sweats to medical staff, wrote sick call requests explaining his pain and suffering, and requested Suboxone every day he saw medical staff. *Id.* at 22-23.  According to Mr. Adams, other prison staff emailed the mental health unit on his behalf. *Id.* at 22.  In early January 2023, his "Legal Assistant" reportedly contacted the maximum-security unit counselor to request medication for Mr. Adams. *Id.* at 24.  Mr. Adams filed three grievances with the prison, which he attached as exhibits to the amended complaint. *Id.* at 53, 55, 63.  Mr. Adams claims that despite these efforts, he was denied Suboxone, psychiatric mediation, and any medical help with withdrawal. *Id.* at 23.

On January 6, 2023, Mr. Adams lost consciousness and hit his head on a concrete floor. *Id.* at 24. He was rushed to the hospital with "paralysis to the left side of his body, swelling to the left side of his head, a concussion, a chemical imbalance, dehydration and a systematic shut down." *Id.* Doctors prescribed him 100 milligrams of Doxepin and 12 milligrams, twice daily, of Suboxone. *Id.* at 25. When he returned to George W. Hill with a doctor's order for his medication, the facility refused to give him MOUD and mental health medications. *Id.* On January 10, he was transferred back to Bucks County Correctional. *Id.*

Mr. Adams alleges that George W. Hill has policies or customs of denying prescribed dosages of Suboxone that exceed 8 milligrams and denying prescribed mental health medications Seroquel and Doxepin. *Id.* at 39. As historical context, he alleges that between January 2018 and March 2021, approximately 10,400 detainees at George W. Hill were forced to withdraw from opioids without access to MOUD. *Id.* at 27. He claims that Delaware County passed a resolution in 2021 to expand treatment, including medication options, for incarcerated people with OUD. *Id.* at 40.

Based on this series of events, Mr. Adams advances claims under the Americans with Disabilities Act ("ADA"), Rehabilitation Act, Eighth Amendment, and Fourteenth Amendment. *Id.* at 42-45. He also asserts professional negligence and intentional infliction of emotional distress claims under Pennsylvania law. *Id.* at 45-46. He seeks monetary relief. *Id.* at 47.

## II.    DEFENDANTS' MOTIONS TO DISMISS

Delaware County and Warden Williams (the county defendants) move to dismiss Mr. Adams's amended complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The county defendants assert that Mr. Adams's ADA and Rehabilitation Act claims should be dismissed because Mr. Adams does not allege that he was precluded from participating in any

programs, services, or activities and that any preclusion occurred because of his alleged disability.  DI 61 at 5-6.  The county defendants move to dismiss Mr. Adams's Eighth and Fourteenth Amendment claims on the basis that Mr. Adams fails to plead sufficient facts to support a deliberate indifference claim against Warden Williams or a *Monell* claim against Delaware County.  *Id.* at 9-12.

In his opposition brief to the county defendants' motion to dismiss, Mr. Adams claims that Warden Williams interfered with his medical treatment.  DI 64 at 3.  He also asserts facts that were not included in his amended complaint.  He alleges that Warden Williams signed an agreement to accept Mr. Adams into George W. Hill from Bucks County Correctional.  *Id.* at 1-2.  He claims that Warden Williams knew of his prescribed medications and medical needs because this information is listed on an Exchange of Inmate Information form.  *Id.* at 2.  Mr. Adams further states that Warden Williams knew of his pain and suffering because other prison staff raised his need for Suboxone and mental health care during weekly staff meetings.  *Id.* at 3.

Nurse Ford and Dr. Phillips (the medical defendants) also move to dismiss Mr. Adams's amended complaint for failure to state a claim.  The medical defendants argue that Mr. Adams's ADA and Rehabilitation Act claims should be dismissed because the medical defendants are not public entities; providing inadequate medical care is not actionable discrimination under either statute; and Mr. Adams fails to provide evidence that any discrimination was because of his disability.  DI 58 at 12-13.  The medical defendants further argue that Mr. Adams has not plead sufficient facts to show deliberate indifference under the Eighth Amendment.  *Id.* at 13-16.  Finally, the medical defendants move to dismiss Mr. Adams's state law claims on the grounds that he fails to comply with the certificate of merit requirements for a professional negligence

claim and does not allege "egregious" enough conduct for an intentional infliction of emotional distress claim. *Id.* at 17-21.

In his opposition brief to the medical defendants' motion to dismiss, Mr. Adams alleges that he met with Dr. Philips on the morning of his third day at George W. Hill. DI 63 at 12. He alleges that he informed Dr. Phillips of his prescribed medications and "tried pleading" with him for 16 milligrams of Suboxone and his psychiatric medications. *Id.*

The motions are ripe for disposition.

## III.   STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). At this stage in the litigation, "we accept as true all factual allegations in the complaint and view those facts in the light most favorable to the non-moving party." *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 566 U.S. at 678. As Mr. Adams is proceeding *pro se*, we construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## IV.   DISCUSSION

### A. Defendants The GEO Group and John Christakis are dismissed for lack of service.

Though over ninety days have passed since Mr. Adams filed the amended complaint, two named defendants — The GEO Group, Inc. and Chief Medical Officer John Christakis — have not been properly served. *See* Fed. R. Civ. P. 4(m). We are sympathetic to the challenges of

effectuating service while incarcerated and have issued orders on three occasions to remind Mr. Adams of the service requirement.  DI 60, 66, 69.  But service has not been effectuated. Accordingly, we dismiss all claims against The GEO Group and John Christakis without prejudice.  We will address Mr. Adams's claims against the remaining four named defendants.

**B.  The official-capacity claims are dismissed with prejudice.**

Mr. Adams asserts ADA, Rehabilitation Act, and Eighth and Fourteenth Amendment claims against Warden Williams in her individual and official capacities.  Mr. Adams's official capacity claims against Warden Williams are duplicative of his claims against the County.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978))).  We will construe the official capacity claims against Warden Williams as against the County and analyze the claims against Warden Williams as individual capacity claims.

Mr. Adams also asserts ADA, Rehabilitation Act, Eighth and Fourteenth Amendment, professional negligence, and intentional infliction of emotional distress claims against Nurse Ford and Dr. Phillips in their individual and official capacities.  Mr. Adams's official capacity claims against the medical defendants are not cognizable because they are employees of The GEO Group, a private entity.  *See Kreis v. Northampton County Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (dismissing official capacity claims against employees of a prison medical provider).  Official capacity suits against employees of private entities would effectively be a suit against the employer.  *See id.* at *8; *Graham*, 473 U.S. at 165-66. Accordingly, we dismiss all of Mr. Adams's official capacity claims against Nurse Ford and Dr.

Phillips with prejudice.  Should Mr. Adams wish to assert claims against The GEO Group, he can do so through a timely served complaint.[4]

### C.  ADA and Rehabilitation Act Claims

Under Title II of the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C § 794(a).

"The 'substantive standards for determining liability [under the ADA and the Rehabilitation Act] are the same.'"  *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (quoting *McDonald v. Pa. Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995)). "[W]hen a plaintiff sues under both the RA and the ADA, [courts] often address both claims in the same breath."  *Berardelli v. Allied Servs. Inst. of Rehab. Med.,* 900 F.3d 104, 117 (3d Cir.

---

[4] If The GEO Group had been properly served, we may have liberally construed Mr. Adams's official capacity claims against Nurse Ford and Dr. Phillips as claims against The GEO Group and analyzed them accordingly.  *See, e.g.*, *Miller v. Chester Cnty. Commissioners*, No. 23-4192, 2024 WL 3606334, at *4 (E.D. Pa. July 31, 2024) (dismissing official capacity claims against prison medical provider employees as "duplicative" of existing direct claims against their employer).  Given that The GEO Group has not been properly served and thus has not had an opportunity to respond to any claims against it, we decline to do so here.  *Cf. Graham*, 473 U.S. at 166 ("As long as the government entity receives *notice and an opportunity to respond*, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (emphasis added).

2018) (internal quotations omitted).  To state a claim under the ADA or the Rehabilitation Act, a plaintiff must assert "that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019).

1. Warden Williams (in her individual capacity), Nurse Ford, and Dr. Phillips are not proper defendants under the ADA and the Rehabilitation Act.

Mr. Adams brings ADA and Rehabilitation Act claims against Warden Williams, Delaware County, Nurse Ford, and Dr. Phillips in their individual capacities.  Under ADA Title II, the proper defendant is the public entity or an individual who controls or directs the functioning of the public entity.  *Miller v. Chester Cnty. Commissioners*, No. 23-4192, 2024 WL 1096530, at *8 (E.D. Pa. Mar. 13, 2024); *see Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).  The proper defendant under Section 504 of the Rehabilitation Act is the recipient of federal financial assistance, not individuals.  *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007).

The Third Circuit has not squarely decided the question of individual damages liability under ADA Title II in precedential decisions, *see Durham v. Kelley*, 82 F.4th 217, 224 n.12 (3d Cir. 2023), but it has dismissed claims for individual damages liability "for the simple reason that there is no such liability," *Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019); *see also Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *Roman v. Cnty. of Chester*, No. 23-4032, 2024 WL

10

2136010, at *16 (E.D. Pa. May 13, 2024); *Brown v. Monsalud*, No. 1:20-CV-0849, 2021 WL

4502238, at *3 (M.D. Pa. Sept. 30, 2021).  We follow suit.  Mr. Adams's individual capacity

claims against Warden Williams are therefore dismissed with prejudice.

 In addition, we agree with the medical defendants that Nurse Ford and Dr. Phillips are

not proper defendants under the ADA or the Rehabilitation Act.  DI 58 at 12.  Mr. Adams alleges

that Nurse Ford and Dr. Phillips are employees of The GEO Group, a private correctional

management company.  DI 56 at 14-15.  The medical defendants are not public entities, nor

entities receiving federal financial assistance, and thus are not proper defendants under ADA

Title II or Section 504 of the Rehabilitation Act.  *See Miller*, 2024 WL 1096530, at *8

(dismissing ADA claims against a private prison medical provider).  Mr. Adams's ADA and

Rehabilitation Act claims against Nurse Ford and Dr. Phillips are dismissed with prejudice.[5]

 2. <u>Mr. Adams states a claim against Delaware County for ADA and Rehabilitation Act</u>
<u>violations.</u>

 The county defendants contend that Mr. Adams has not alleged that he was precluded

from any program, benefit, or service, only that he was denied proper medical treatment.  DI 61

at 5.  They further argue that Mr. Adams did not allege that any denial or discrimination was

*because* of his disability.  *Id.* at 6-7.  On both points, we disagree.

 "[T]he phrase 'service, program, or activity' under Title II, like 'program or activity'

under Section 504, is 'extremely broad in scope and includes everything a public entity does.'"

*Furgess*, 933 F.3d at 289 (quoting *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human*

*Servs.*, 796 F.3d 293, 301 (3d Cir. 2015)).  As the Supreme Court has stated, "[m]odern prisons

---

[5] Mr. Adams asserts that The GEO Group receives federal financial assistance.  DI 56 at 14.  Should Mr. Adams wish to bring a claim under Section 504 against The GEO Group, he should do so directly in a properly pleaded and served complaint.

provide inmates with many recreational activities, medical services, and educational and vocational programs, all of which at least theoretically benefit the prisoners (and any of which disabled prisoners could be excluded from participation in)." *Pa Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (internal quotations omitted); *see United States v. Georgia*, 546 U.S. 151, 157 (2006) (noting that "deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as . . . medical care, and virtually all other prison programs" could constitute exclusion from, or denial of the benefits of, prison services, programs, or activities).

Mr. Adams alleges that the county defendants denied him Suboxone, psychiatric medication, and medical help with withdrawal.  DI 56 at 23.  He claims that due to withdrawal symptoms, he struggled to exercise, read, and eat.  *Id.*  Under the broad definition of "service, program, or activity" articulated by the Third Circuit, these are adequate allegations that he was denied the benefit of the prison's medical services and / or precluded from participating in programs or activities.

To satisfy the causation requirement under Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff "must prove that they were treated differently based on the protected characteristic, namely the existence of their disability."  *CG v. Pennsylvania Dep't of Educ.,* 734 F.3d 229, 236 (3d Cir. 2013).  Mr. Adams alleges that he suffers from OUD and mental illness.  DI 56 at 16.  He claims that he was denied his previously prescribed Suboxone dosage in favor of a lesser amount and then denied Suboxone or other MOUD completely.  *Id.* at 19-20, 22.  He further claims that George W. Hill refused to provide him with medication to aid his withdrawal or psychiatric medication.  *Id.* at 23.  Construing Mr. Adams's claims liberally, we agree with other courts in this district and beyond that have viewed similar facts as

12

sufficiently pleading discrimination by reason of disability.[6] *See Strickland v. Delaware County*, No. 21-4141, 2022 WL 1157485, at *3 (E.D. Pa. April 19, 2022) (denying motion to dismiss ADA and Rehabilitation Act claims where the plaintiff alleged that he was excluded from participation in the prison methadone program, and the prison "failed to undertake an individualized review of [his] situation to determine whether he could be safely provided with his prescribed medical treatment . . . an adequate alternative treatment, or otherwise reasonably accommodate [his] disability"); *Miller*, 2024 WL 3606334, at *1, *7 (upholding ADA and Rehabilitation Act claims where defendant "received no MAT or medication for opioid use disorder" and "was forced to detox himself"); *Roman*, 2024 WL 2136010, at *17 (denying motion to dismiss ADA and Rehabilitation Act claims where plaintiff "alleged that he suffers from opioid use disorder and has been intentionally excluded from participation in the MAT program or provided an acceptable alternative treatment"); *Schiovane v. Luzerne County*, No, 3:21-CV-01686, 2022 WL 3142615, at *8 (W.D. Pa. Aug. 5, 2022) (denying motion to dismiss ADA and Rehabilitation Act claims where the county denied the plaintiff access to medication and "failed to accommodate her needs during withdrawal from opioids"); *McPherson v. Cnty, of Dauphin*, No. 1:19-CV-01865, 2020 WL 1558206, at *4 (M.D. Pa. Mar. 24, 2020) (denying a motion to dismiss ADA claims where the plaintiff with bipolar disorder was denied access to his prescribed medications).

In *Brown v. Deparlos*, 492 Fed. App'x 211 (3d Cir. 2012), which the county defendants rely on in their motion to dismiss, the plaintiff "merely assert[ed] that defendants violated the

---

[6] Mr. Adams alleges that he was denied Suboxone two days after prison staff accused him of "cheeking" medication. DI 56 at 20. Notably, Mr. Adams can state a claim under the ADA even if his disability was not the "sole cause" of the discriminatory action. *See Durham*, 82 F.4th at 226 ("[T]he ADA only requires but-for causation.").

ADA" and "fail[ed] to allege *any* facts that demonstrate[d] that the alleged inadequate or improper medical care . . . was because of a disability." *Id.* at 215 (emphasis added). That is not the situation here.

Finally, the county defendants argue that Mr. Adams's disability claims must be dismissed because he has not shown intentional discrimination. DI 61 at 7-8. Claims for compensatory damages under Title II of the ADA and Section 504 of the Rehabilitation Act require a showing of intentional discrimination. *S.H. ex. rel. Durrell v. Lower Merion School Dist.*, 729 F.3d 248, 261 (3d Cir. 2013); *Furgess*, 933 F.3d at 289. "To prove intentional discrimination, an ADA claimant must prove at least deliberate indifference, and to plead deliberate indifference, a claimant must allege (1) knowledge that a federally protected right is substantially likely to be violated . . . and (2) failure to act despite that knowledge." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (citations and internal quotations omitted).

Mr. Adams has plead sufficient facts to support a claim of intentional discrimination. Mr. Adams alleges that George W. Hill forced approximately 10,400 detainees to withdraw from opioids without access to MOUD from January 2018 through March 2021. DI 56 at 27. He further alleges that Delaware County passed a resolution in 2021 to expand MOUD treatment for incarcerated people. *Id.* at 40. These facts, if true, suggest that the county defendants were aware of the dangers of forced withdrawal and the importance of MOUD for people suffering from opioid addiction. According to Mr. Adams, the county defendants nonetheless cut off Mr. Adams's Suboxone, forced him into withdrawal, and denied him medical help with withdrawal. *Id.* at 20-23.

The county defendants contend that they could not have intentionally discriminated against Mr. Adams because a policy of denying Suboxone prescriptions over 8 milligrams is

non-discriminatory.  DI 61 at 8.  Even if the policy were not discriminatory — which we do not

decide at this stage — the decision to completely cease Mr. Adams's Suboxone and deny him

medical help with withdrawal could have been.  *See Strickland*, 2022 WL 1157485, at *4

(denying a motion to dismiss where "[d]efendants were aware of the value of methadone as an

OUD treatment" and the "inadequacy of the OUD treatment provided by George W. Hill" and

"[n]onetheless denied Plaintiff his prescribed treatment").  Mr. Adams alleges sufficient facts to

support a claim of intentional discrimination, and he states a claim against the county defendants

for compensatory damages.

> 3.  <u>Mr. Adams cannot recover punitive damages from the county defendants for ADA or Rehabilitation Act violations.</u>

Briefly, we agree with the county defendants that punitive damages against municipal

entities are not available under Title II of the ADA or Section 504 of the Rehabilitation Act.  DI

61 at 5.  *See Doe v. Cnty. of Centre, PA*, 242 F.3d 437, 457 (3d Cir. 2011) ("[W]e find that Title

II of the ADA and Section 504 of the Rehabilitation Act lack any indicia of Congress' intent to

override the settled common law immunity of municipalities from punitive damages."); *Talley v.

Clark*, No. 19-3078, 2023 WL 118470, at *1 n.2 ("We also note that punitive damages are not

available under Title II of the ADA.").  Mr. Adams's ADA and Rehabilitation Act claims against

the county defendants for punitive damages are dismissed with prejudice.

**D.  Eighth and Fourteenth Amendment Claims**

Mr. Adams asserts claims for deliberate indifference to his serious medical needs in

violation of the Eighth and Fourteenth Amendments.  He brings these claims via 42 U.S.C

§ 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In the Prisoner Complaint form attached to Mr. Adams's handwritten amended complaint, he asserts that he is a pre-trial detainee. DI 56 at 4. The Eighth Amendment prohibition against cruel and unusual punishment does not apply to pre-trial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005). We therefore analyze Mr. Adams's claims under the Fourteenth Amendment and not the Eighth Amendment.

To plead inadequate medical care under the Fourteenth Amendment, the plaintiff must allege "(1) a serious medical need and (2) acts or omissions by [individuals] that indicate a deliberate indifference to that need." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (internal quotations omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347-48 (3d Cir. 1987)). Deliberate indifference is a subjective standard consistent with recklessness. *Id.* It requires that an individual "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

1. Mr. Adams states a *Monell* claim against Delaware County.

To plead a Fourteenth Amendment claim against a municipal entity under § 1983, a plaintiff must allege that the municipality's policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. "A plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93,

16

105 (3d Cir. 2019) (citations and internal quotations omitted); *see Monell*, 436 U.S. at 694.

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy

with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v.

City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895

F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a

given course of conduct, although not specifically endorsed or authorized by law, is so well-

settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d

845, 850 (3d Cir. 1990)).

Mr. Adams alleges that the county defendants have official policies or customs of

denying prescribed dosages of Suboxone that exceed 8 milligrams and denying prescribed

mental health medications Seroquel and Doxepin.  DI 56 at 39.  The county defendants' sole

argument against a *Monell* claim based on the MOUD policy is that Mr. Adams fails to state a

claim because "there is no constitutional right to the requested dosage of suboxone."  DI 61 at

12.  We agree that "mere disagreement as to the proper medical treatment" does not a support a

constitutional violation.  *Monmouth Cnty.*, 834 F.2d at 346. Still, the mere fact that the alleged

MOUD policies allow for some level of treatment does not necessarily defeat a *Monell* claim at

this stage.  *See Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017) ("[T]here are

circumstances where some care is provided yet it is insufficient to satisfy constitutional

requirements.").  Construing Mr. Adams's complaint liberally, he sufficiently pleads a *Monell*

claim against Delaware County.

2.  Mr. Adams does not state a Fourteenth Amendment claim against Warden Williams.

The county defendants contend that Mr. Adams does not allege sufficient facts to show that Warden Williams was personally involved in the alleged Fourteenth Amendment violation. DI 61 at 10-11.  Based on the facts asserted in Mr. Adams's amended complaint only, we agree.

A defendant in a civil rights action must have personal involvement in the alleged wrongs.  *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).  Liability cannot be predicated solely on the basis of *respondeat superior. Id.*; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, a supervisor can be liable if (1) "they established and maintained a policy, practice, or custom which directly caused the constitutional harm"; or (2) "they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

Mr. Adams alleges that Warden Williams oversees all aspects of George W. Hill, including medical care, and has "rulemaking or policymaking authority regarding the jail."  DI 56 at 39.  He further alleges that she was aware of the resolution to expand the MAT program and the risks of forced withdrawal, detox, and denial of MOUD and psychiatric medication.  *Id.* at 38.  In his amended complaint, Mr. Adams does not allege any facts showing that Warden Williams participated in the denial of Mr. Adams's care, directed others to deny his care, or had knowledge of her subordinates' decisions to deny him care.  *See Parkell*, 833 F.3d at 330.  Mr. Adams's general statement that Warden Williams has "rulemaking and policymaking authority" at the jail does not provide a sufficient factual basis for us to infer that she developed the policy or custom that caused his forced withdrawal and subsequent hospitalization.

18

In his opposition brief to the county defendants' motion to dismiss, Mr. Adams claims that Warden Williams interfered with the provision of his medical care. DI 64 at 3. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding that prison officials act deliberately indifferent when they "intentionally deny[] or delay[] access to medical care or interfer[e] with the treatment"). Yet his amended complaint includes no facts supporting this contention. Mr. Adams also alleges additional facts in opposition to show that Warden Williams had knowledge of the inadequacy of his care. He alleges that Warden Williams signed off on his transfer to George W. Hill with full knowledge of his medical needs, and she knew of his pain and suffering from the grievance system and weekly staff meetings. DI 64 at 1-3. Because Mr. Adams did not include these additional facts in his amended complaint, we cannot consider them at this stage. *See Pennsylvania ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *McArdle v. Tronetti*, 961 F.2d 1083, 1089 (3d Cir. 1992) (in a *pro se* proceeding, refusing to consider additional facts in an affidavit filed after the complaint). Accordingly, we dismiss Mr. Adams's individual capacity Fourteenth Amendment claim against Warden Williams without prejudice.

3. Mr. Adams states a Fourteenth Amendment claim against Nurse Ford but does not state a claim against Dr. Phillips.

Deliberate indifference requires "significantly more than negligence." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 329 (3d Cir. 2020); *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998). As previously stated, "mere disagreement" as to an appropriate medical response will not suffice. *Monmouth Cnty.*, 834 F.2d at 346. Deliberate indifference may be properly alleged when a prison official "(1) knows of a prisoner's need for medical treatment but

intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The medical defendants characterize Mr. Adams's allegations as mere disagreement with the care provided.  DI 58 at 13-15.  They argue that Mr. Adams does not point to any facts showing that the medical defendants acted with deliberate indifference or knew that their conduct presented a substantial risk of harm to Mr. Adams and acted or failed to act anyway.  *Id.* at 13-14.

As to claims against Nurse Ford, we disagree.  Mr. Adams alleges that he repeatedly informed Nurse Ford of his need for 16 milligrams of Suboxone and psychiatric medication.  DI 56 at 20.  He alleges that when Nurse Ford abruptly stopped his Suboxone on December 29, he told her that doing so would cause him physical harm.  *Id.*  She reportedly stopped it anyway.  *Id.* Mr. Adams further claims that Nurse Ford is responsible for distributing Suboxone and overseeing "all aspects concerning suboxone" at George W. Hill.  *Id.* at 39.  He says that despite his many requests for medical help after December 29, 2022, he was repeatedly denied Suboxone and medical help with withdrawal.  *Id.* at 23.  The medical defendants argue that Mr. Adams received Suboxone until he "violated the prison's rules and attempted to hide medication."  DI 58 at 16.  Nonetheless, when ruling on a motion to dismiss, we must accept the claimant's version of events as true.  *See Klotz*, 991 F.3d at 462.  Mr. Adams alleges sufficient facts to support a deliberate indifference claim against Nurse Ford.

Turning to Dr. Phillips, Mr. Adams alleges that, on an unspecified date, he asked Dr. Philips for 16 milligrams of Suboxone and 100 milligrams of Seroquel. DI 56 at 21.  Dr. Phillips allegedly informed him that the prison only provides 8 milligrams of Suboxone and denied his

request for psychiatric medication.  *Id.*  Mr. Adams also claims that Dr. Phillips and others

"formulated the care plan… which consisted of Mr. Adams forced withdrawal," but he does not

specify any details about Dr. Phillips' involvement.  *Id.* at 22.  Based on these facts alone, we

cannot reasonably infer that Dr. Phillips was subjectively aware of a substantial risk of harm to

Mr. Adams and that he intentionally refused, delayed, or prevented treatment.  *See Farmer*, 511

U.S. at 837; *Rouse*, 182 F.3d at 197.

Mr. Adams alleges in opposition to the motion to dismiss that he met with Dr. Phillips on

his third day at George W. Hill.  DI 63 at 12.  He alleges that he informed Dr. Phillips of his

prescribed dosages for all of his medications and tried "pleading" with him for his Suboxone and

anti-psychotic medication, but Dr. Phillips denied him.  *Id*.  As previously stated, we cannot

consider these additional facts at this stage.  Mr. Adams's Fourteenth Amendment claim against

Dr. Philips is dismissed without prejudice.

### E.  Mr. Adams's professional negligence claims are dismissed for failure to comply with certificate of merit requirements.

Mr. Adams alleges professional negligence under Pennsylvania state law against Nurse

Ford and Dr. Phillips.  The medical defendants argue that these claims should be dismissed for

failure to comply with certificate of merit (COM) requirements.  DI 58 at 17-18.

Pennsylvania Rule of Civil Procedure 1042.3(a) provides:

> (a) In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that . . . an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm . . . .

> (e) If a certificate of merit is not signed by an attorney, the party signing the certificate of merit shall . . . attach to the certificate of merit the written statement from an appropriate licensed professional as required by subdivisions (a)(1) and (2).

This rule is substantive state law that applies in federal court. *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011); *Booker v. United States*, 366 Fed. App'x 425, 426 (3d Cir. 2010). Failure to file a COM is a proper ground for dismissal when presented in a motion to dismiss. *See Booker*, 366 Fed. App'x at 426-27; *Turner v. Wetzel*, No. 4:18-CV-00361, WL 7253304, at *5 (M.D. Pa. Dec. 28, 2018). In situations where a plaintiff fails to file a proper COM, courts can consider two equitable exceptions to Rule 1042.3: (1) whether the plaintiff substantially complied with the rule; and (2) whether the plaintiff has offered a reasonable explanation or legitimate excuse for the noncompliance. *Ramos v. Quien*, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008); *see Womer v. Hilliker*, 908 A.2d 269, 276-77, 280 (Pa. 2006). If a plaintiff "substantially complies" with the Rule's requirements, technical defects are excused. *See Booker*, 366 Fed. App'x at 428.

Mr. Adams did not file a COM with his original complaint. DI 2. The medical defendants filed a notice of intent to enter judgment for failure to file a COM. DI 38. Mr. Adams then included a signed Rule 1042.3 COM form with his amended complaint — filed over sixty days after the original complaint — and checked the box stating that a licensed medical professional had supplied him with a written statement. DI 56 at 50. However, rather than attaching a written statement, he directs us to Exhibit 4 of his amended complaint, which constitutes the medical records from his January 2023 hospitalization. *Id.* at 55-61. Nowhere in the medical records does a medical professional comment on the care that Mr. Adams received while incarcerated at George W. Hill. *Id.*

Mr. Adams's efforts do not amount to substantial compliance.  In *Booker*, the Third Circuit held that a *pro se* plaintiff who "located a qualified physician, compiled his medical records, timely filed the necessary requests for extensions of time and attempted to provide the Court with a compliant COM," even though the physician's statement did not ultimately include the required information, substantially complied with Rule 1042.3.  366 F. App'x at 429; *see also Ramos*, 631 F. Supp. 2d at 612 (granting exception when the plaintiff requested an extension of time and filed within the time period granted, even though the state court did not have jurisdiction when it granted the extension).  Here, Mr. Adams filed an untimely COM, which may bar relief under Pennsylvania law. *See Hoover v. Davila*, 862 A.2d 591, 594 (Pa. Super. Ct. 2004) (holding that the 60-day clock begins on the date of the original complaint, not the date of the amended complaint).  More importantly, he failed to locate a medical provider to complete a COM and submitted medical records that contain none of the information required by Rule 1042.3.

We recognize the challenges of pursuing legal claims without counsel, but we agree with other courts in Pennsylvania that *pro se* status does not absolve a plaintiff of the responsibility to comply with Rule 1042.3.  *See Brown v. Wetzel*, No. 1:18-CV-86, 2019 WL 1331619, at *7 (W.D. Pa. Mar. 25, 2019) (dismissing claim when *pro se* plaintiff did not file a COM because it was "burdensome"); *Mayo v. Cnty. of York*, No. 1:10-CV-1869, 2012 WL 948438, at *1 (M.D. Pa. Mar. 20, 2012) (dismissing claim when *pro se* plaintiff filed an (improper) COM two months after the deadline and did not file a motion for an extension of time); *see Booker*, 366 F. App'x at 428 (3d Cir. 2010) (applying COM rule to a *pro se* plaintiff).  Mr. Adams's professional negligence claims against Nurse Ford and Dr. Phillips are dismissed without prejudice.

**F.  Intentional infliction of emotional distress**

Mr. Adams brings state law claims against the medical defendants for intentional infliction of emotional distress. He alleges that Nurse Ford and Dr. Phillips acted in an "extreme and outrageous manner" by failing to treat his opioid and mental health disorders and forcing him to suffer pain and agony for weeks.  DI 56 at 46.

1.  <u>Mr. Adams states an intentional infliction of emotional distress claim against Nurse Ford but fails to state a claim against Dr. Phillips.</u>

Pennsylvania law requires a plaintiff claiming intentional infliction of emotional distress to establish four elements: (1) intentional or reckless conduct, (2) extreme and outrageous conduct, (3) the conduct caused the distress; and (4) the distress was severe.  *Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).  To give rise to liability, the conduct at issue must be "both extreme and very offensive to the moral values of society."  *Silver v. Mendel*, 894 F.2d 598, 606 (3d Cir. 1990); *see Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) ("It has been said that '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987))).  To recover damages from an intentional infliction of emotional distress claim, the plaintiff "must suffer some type of resulting physical harm due to the defendant's outrageous conduct."  *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010).

The medical defendants compare Mr. Adams's allegations to Pennsylvania decisions where a party's conduct did not support an intentional infliction of emotional distress claim.  DI 58 at 10-21.  According to the medical defendants, if this conduct was not outrageous, then

24

neither was their conduct.  But none of the cases cited by the medical defendants concerns the refusal to provide medical care to a claimant.  We agree with other courts in this district that outright refusal to provide medical care may indicate extreme and outrageous conduct.  *See Charleston v. Corizon Health, Inc*., No. 17-3039, 2018 WL 1757606, at *22 (E.D. Pa. Apr. 12, 2018) (granting health care provider's summary judgment motion in part because "[t]his is not a case of outright refusal to provide medical care"); *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 455 (E.D. Pa. 2020) (granting summary judgment because prison medical providers "made efforts to evaluate [the plaintiff's] physical and mental health condition and provide him with appropriate medical care"); *see also Wilson v. Jin*, 698 F. App'x 667, 673 (3d Cir. 2017) (affirming grant of summary judgment where prison healthcare providers gave prisoner "extensive medical care over a period of several months" and thus did not act outrageously or extremely).

Mr. Adams's amended complaint, taken as true, demonstrates that Nurse Ford outright refused to provide him with medical care after December 29.  When he told Nurse Ford that she could not abruptly cease his Suboxone, she allegedly replied, "I just did."  DI 56 at 20.  Furthermore, Nurse Ford allegedly oversees the prison's entire Suboxone program.  *Id.* at 39.  Mr. Adams claims that despite his apparent suffering and many requests for care, he was repeatedly denied Suboxone and medical help with withdrawal.  *Id.* at 23.

Mr. Adams does not make the same showing for Dr. Phillips.  He alleges that Dr. Phillips informed him of the 8 milligram Suboxone policy and denied him requested psychiatric medications.  *Id.* at 21.  There are no allegations in the amended complaint that Dr. Phillips outright denied Mr. Adams care in the face of clear distress.  Construing Mr. Adams's amended complaint liberally, his allegations just cross the line to state an intentional infliction of

25

emotional distress claim against Nurse Ford but not Dr. Phillips.  We dismiss the claim against

Dr. Phillips without prejudice.

## V.      CONCLUSION

For the foregoing reasons, the following claims are dismissed without prejudice: all

claims against The GEO Group and John Christakis; Fourteenth Amendment deliberate

indifference claims against Warden Williams and Dr. Phillips in their individual capacities; all

professional negligence claims against Nurse Ford and Dr. Phillips; and the intentional infliction

of emotional distress claim against Dr. Phillips in his individual capacity.[7]

The following claims are dismissed with prejudice because they are not brought against

proper defendants, are not cognizable under law, and / or are duplicative of other claims: all

ADA and Rehabilitation Act claims against Warden Williams; ADA and Rehabilitation Act

claims against Delaware County for punitive damages; all ADA and Rehabilitation Act claims

against Nurse Ford and Dr. Phillips; Fourteenth Amendment deliberate indifference claims

against Warden Williams, Nurse Ford, and Dr. Phillips in their official capacities; intentional

---

[7] Regarding the claims dismissed without prejudice, we also give Mr. Adams the option to file a second amended complaint in the event he can allege additional details to state a claim against the remaining defendants.  A plaintiff may clarify his claims "by . . . explaining in the [second] amended complaint the 'who, what, where, when and why' of [his] claim."  *Gambrell v. S. Brunswick Bd. of Educ.*, No. 18-16359, 2019 WL 5212964, at *4 (D.N.J. Oct. 16, 2019).  Any second amended complaint must clearly describe the factual basis for Mr. Adams's claims against the relevant defendants and how each defendant was personally involved in the alleged denial of his constitutional rights.  Any second amended complaint shall be a complete document that does not rely on the initial complaint, the amended complaint, responses to the motion to dismiss, or any other papers filed in this case to state a claim.  This means that if Mr. Adams files a second amended complaint, he must include allegations related to his claims that have not been dismissed, if he seeks to proceed on those claims.  He does not need to make new allegations as to these claims but must reassert them. Claims that are not included in the second amended complaint will not be considered part of this case because the second amended complaint becomes the operative pleading.

infliction of emotional distress claims against Nurse Ford and Dr. Phillips in their official capacities; and all Eighth Amendment claims.

The case will proceed on Mr. Adams's ADA and Rehabilitation Act claims against Delaware County; Fourteenth Amendment claims against Delaware County and against Nurse Ford in her individual capacity; and the intentional infliction of emotional distress claim against Nurse Ford in her individual capacity.